UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *et al. ex rel.*
TARIK AHMED,

               Plaintiffs,

          - against -

PFIZER INC., TRIS PHARMA, INC., NEXTWAVE
PHARMACEUTICALS, INC., and KETAN MEHTA,

              Defendants.

**ORDER**

18 Civ. 870 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In this qui tam action, Relator Tarik Ahmed asserts claims under the False Claims

Act ("FCA"), 31 U.S.C. § 3729 et seq., and the Anti-Kickback Statute ("AKS"), 42 U.S.C. §

1320a-7b(b), against Defendants Pfizer Inc. ("Pfizer"), Tris Pharma, Inc. ("Tris"), NextWave

Pharmaceuticals, Inc. ("NextWave"), and Ketan Mehta.  (Second Amended Complaint ("SAC")

(Dkt. No. 34) ¶¶ 1, 4-5)  According to Relator, Defendants manufacture, market, and distribute a

federally controlled substance under the brand name Quillivant XR ("Quillivant").  (Id. ¶ 1-2)

Relator alleges that Defendants caused false claims to be submitted to Medicare, Medicaid, and

TRICARE to conceal deficiencies in the development of Quillivant.  (Id. ¶¶ 1-3)

       On January 31, 2018, Relator filed a qui tam complaint on behalf of the United

States, in camera and under seal pursuant to 31 U.S.C. § 3730(b)(2), against Defendants.

(Cmplt. (Dkt. No. 14) ¶¶ 4-5)

       On June 5, 2018, Relator filed the First Amended Complaint, in camera and under

seal pursuant to 31 U.S.C. § 3730(b)(2), asserting FCA and AKS claims on behalf of the United

States, as well as state-law claims on behalf of the States of California, Colorado, Connecticut,

Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Vermont, Virginia, Washington, and the District of Columbia. (Am. Cmplt. (Dkt. No. 15) ¶¶ 4-5) The First Amended Complaint also asserts a claim on Relator's behalf pursuant to 31 U.S.C. § 3730(h)(1). (Id. ¶ 6)

On April 10, 2025, the Insurance Commissioner for the State of California, on behalf of the California Department of Insurance ("CDI"), notified the Court that "he declines to intervene and elects not to proceed with this action." (CDI Apr. 10 2025 Ltr. (Dkt. No. 25-3) at 2)

On May 5, 2025, the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Iowa, Louisiana, Maryland, Massachusetts, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Vermont, Virginia, Washington, and the District of Columbia notified the Court of their decision not to intervene in this action. (States May 5, 2025 Ltr. (Dkt. No. 25-2) at 1) The States of Indiana and Michigan notified the Court that "they are not intervening at this time and do not object to the lifting of the seal. However, the investigations by the States of Indiana and Michigan will continue." (Id.)

On May 9, 2025, the United States notified the Court of its decision not to intervene in this action. (U.S. May 9, 2025 Ltr. (Dkt. No. 25-1) at 1)

On June 16, 2025, in light of the aforementioned declinations to intervene, this Court unsealed the Complaint, Amended Complaint, the Government's and the States' Notices of Decision to Decline Intervention, and the unsealing order itself. (Order (Dkt. No. 13))

On July 2, 2025, Defendants Tris and NextWave filed the instant unopposed motion seeking "an order (i) sealing certain publicly-filed exhibits that accompanied the complaints in this case and (ii) directing [Relator] to file on the public docket the redacted versions of those exhibits obscuring Tris' proprietary and trade secret information in the form attached to the [Liang] Declaration." (Def. Mot. to Seal (Dkt. No. 20) at 1-2)  Defendants Tris and NextWave argue that "the redacted portions of these documents contain highly sensitive and confidential information relating to Tris' development and manufacturing of two drugs, Quillivant XR and Dyanavel XR. The continued disclosure of such information threatens to cause Tris significant economic harm, thus warranting sealing." (Def. Mot. to Seal (Dkt. No. 20) at 3)

In support of their motion, Defendants Tris and NextWave submitted the declaration of Alfred Liang, Ph.D., Vice President of Research and Development at Tris. (Declaration of Alfred Liang ("Liang Decl.") (Dkt. No. 22) ¶ 1)  The Declaration explains that Tris "created a drug delivery system called LiquiXR" that "enables controlled drug delivery in oral liquid dosage form." (Id. ¶ 5)  According to Liang, the "technology is proprietary[,] has been critical to the company's success[, and] has allowed [Tris] to develop more than a dozen drug products, many of which are successfully commercialized." (Id. ¶ 6)  The Declaration asserts that "many of the documents" submitted in support of the Complaint and Amended Complaint "contain proprietary information, and even trade secrets, that would give Tris' competitors a competitive advantage in the marketplace." (Id. ¶ 9)  According to the Declaration, public access to the materials "in unredacted form poses a significant risk to Tris' intellectual property and could result in serious economic harm to the company." (Id. ¶ 9)

On January 22, 2026, Relator filed the Second Amended Complaint asserting FCA and AKS claims on behalf of the United States, as well as state-law claims on behalf of the States of Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Virginia, Vermont, Washington, and the District of Columbia. (SAC (Dkt. No. 34) ¶ 4) Relator also asserts a claim on his own behalf pursuant to 31 U.S.C. § 3730(h)(1). (Id. ¶ 5)

On February 4, 2026, Defendants Tris and NextWave filed a letter "to advise the Court that certain exhibits attached to [Relator's] recently-filed Second Amended Complaint are the subject of a pending motion to seal." (Dkt. No. 43) "For the same reasons set forth in their motion to seal, Tris and NextWave respectfully request that the Court seal Exhibits B, D, E, G, K, L, and O to the Second Amended Complaint and order Relator to re-file on the public docket redacted versions of these exhibits." (Id.)

## I.    LEGAL STANDARDS

As a general matter, documents filed in support of a motion "are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006). This "presumption of access . . . can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." Id.

The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal. A court must first determine whether the presumption of public access attaches to the documents at issue. A presumption of public access attaches to any

4

item that constitutes a "judicial document" – i.e., an "'item . . . relevant to the performance of the judicial function and useful in the judicial process.'" Id. at 115 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")). If the court determines that a document for which sealing is sought is a "judicial document," the court must then determine the weight of the presumption of access. "'[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" Id. at 119 (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")). "'Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" Id. (quoting Amodeo II, 71 F.3d at 1049). Finally, after determining the weight of the presumption of access, the court must "'balance competing considerations against it.'" Id. at 120 (quoting Amodeo II, 71 F.3d at 1050). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Id. (quoting Amodeo II, 71 F.3d at 1050).

## II.    ANALYSIS

Here, the documents at issue were submitted in connection with the Complaint, the Amended Complaint, and the SAC.[1] It is well established that a complaint and its supporting documents are "judicial documents." See Bernstein v. Bernstein Litowitz Berger & Grossmann

---

[1] Defendants' motion to seal concerns exhibits to the Complaint and Amended Complaint. (See Dkt. No. 20) On January 22, 2026, after Defendants filed the motion to seal, Relator filed the SAC. (SAC (Dkt. No. 34)) According to Defendants Tris and NextWave, "the Second Amended Complaint . . . contains substantially the same exhibits as the original and amended complaints." (Dkt. No. 43) To the extent Defendants' motion to seal concerns documents that are attached to the SAC, the Court's analysis applies with equal force to those exhibits.

LLP, 814 F.3d 132, 140 (2d Cir. 2016) ("A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision.") (quoting Fed. Trade Comm'n v. Abbvie Prods. LLC, 713 F.3d 54, 62 (11th Cir. 2013)); see also GSC Logistics, Inc. v. Amazon.com Services LLC, 23 Civ. 5368, 2023 WL 4993644, at *4 ("With respect to the first step of the analysis, the [c]omplaint and its supporting exhibits are plainly judicial documents subject to a presumption of public access.").

The presumption of public access is particularly strong here because pleadings "are highly relevant to the exercise of Article III judicial power." Bernstein, 814 F.3d 132, 140; see also Lugosch, 435 F.3d at 121 ("[W]here documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches.").

To rebut the strong presumption of public access that applies here, the party seeking sealing must offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).

The Court considers below whether Defendants Tris and NextWave have made the showing necessary to justify their sealing requests.

### A.    Defendants' Requests to Redact "Proprietary and Trade Secret Information"

Defendants Tris and NextWave move to redact portions of select exhibits filed in connection with Plaintiff's Complaint, Amended Complaint, and SAC on the grounds that any presumption of public access is outweighed by "Tris'[s] interest in protecting its trade secrets and details regarding its proprietary technology and methods." (Def. Mem. (Dkt. No. 21) at 6) As described above, according to the Liang Declaration, Tris "created a drug delivery system

called LiquiXR," that "enables controlled drug delivery in oral liquid dosage form." (Liang Decl. (Dkt. No. 22) ¶ 5) The Declaration asserts that "the details of this technology and other manufacturing processes" are proprietary, and "Tris diligently protects" such information to "ensure[] that competitors cannot profit from Tris' innovation." (Id. ¶ 6) According to Liang, "many of the documents" supporting the complaints "contain proprietary information, and even trade secrets, that would give Tris' competitors a competitive advantage in the marketplace."[2] (Id. ¶ 9)

In particular, Defendants Tris and NextWave propose redactions to the following categories of documents: (1) "dissolution test"[3] methods for Quillivant, (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 10-15, 37-43; Liang Decl., Ex. 2 (Dkt. No. 22-2); Liang Decl., Ex. 4 (Dkt. No.

---

[2] The Declaration asserts that "many of the documents contain . . . trade secrets," (Liang Decl. (Dkt. No. 22) ¶ 9), but does not identify with particularity which information constitutes an alleged trade secret. Without more, the Court cannot determine what, if any, information that Defendants seek to protect constitutes a trade secret. See In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (applying the six-factor test set forth in Restatement (First) of Torts § 757, comment b, to determine whether the parties properly alleged the existence of trade secrets warranting protection from public scrutiny).

[3] According to Relator, "[a] dissolution method tests the release of a drug's active pharmaceutical ingredient ('API') over time to simulate how the API would be released after ingestion." (SAC (Dkt. No. 34) ¶ 55) To pass the test, a drug must satisfy certain criteria, "measured in terms of the percentage of the drug dissolved at different points in time." (Id.) "If a drug fails any acceptance criteria, it is considered 'out-of-specification,' or 'OOS.' Dissolution testing must be conducted prior to release ('release product') and after storage to ensure the drug remains stable until the expiration date ('stability product')." (Id.)

22-4)); (2) "deviation reports"[4] for Methylphenidate ER Powder for Oral Suspension,[5] (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 29-31; Liang Decl., Ex. 3 (Dkt. No. 22-3)); (3) an email dated November 12, 2014, from Tris's Senior Manager of Quality of Control, (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 68; Liang Decl., Ex. 5 (Dkt. No. 22-5)); (4) observations by the United States Food and Drug Administration ("FDA") dated March 20, 2017, (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 86, 88-91; Liang Decl., Ex. 6 (Dkt. No. 22-6)); and (5) excerpts from Tris's internal auditing reports, (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 118, 123-26, 129, 133, 136-41, 143, 145, 148; Liang Decl., Ex. 7 (Dkt. No. 22-7)).[6] The Court assesses Defendants' proposed redactions to each category of documents below.[7]

---

[4] The Code of Federal Regulations requires drug manufacturers to implement "written procedures for production and process control designed to assure that the drug products have the identity, strength, quality, and purity they purport or are represented to possess." 21 C.F.R. § 211.100(a). Pursuant to 21 C.F.R. § 211.100(b), drug manufacturers must "record[] and justif[y]" "[a]ny deviation from the written procedures." Id. § 211.100(b).

[5] Methylphenidate ER Powder for Oral Suspension is the chemical name for Quillivant. (See SAC Ex. A (Dkt. No. 34-1) at 3)

[6] Exhibit 1 of the Liang Declaration proposes redactions to Exhibits B, D, E, G, L, and O to the Amended Complaint. Exhibit 2 of the Liang Declaration proposes redactions to Exhibit B to the Complaint. Exhibit 3 of the Liang Declaration proposes redactions to Exhibit D to the Complaint. Exhibit 4 of the Liang Declaration proposes redactions to Exhibit E to the Complaint. Exhibit 5 of the Liang Declaration proposes redactions to Exhibit G to the Complaint. Exhibit 6 of the Liang Declaration proposes redactions to Exhibit K to the Complaint. Exhibit 7 of the Liang Declaration proposes redactions to Exhibit N to the Complaint. (Liang Decl. (Dkt. No. 22) ¶¶ 10-16)

[7] Defendants note that "[p]ursuant to the Court's Individual Rules of Practice, these documents are being filed publicly in redacted form and under seal with the redacted text highlighted in red." (Liang Decl. (Dkt. No. 22) ¶ 10 n.1) Defendants also clarify that "some of the exhibits already contained yellow or gray highlighting, and Tris has not altered those portions of the exhibits." (Id.)

8

### 1.    The Proposed Redactions

Exhibit B to the Complaint and Exhibit B to the Amended Complaint are referred to as Dissolution Method Revision 5.  (Cmplt. Ex. B (Dkt. No. 14-2); Am. Cmplt. Ex. B (Dkt. No. 15-1) at 8-15)  Exhibit E to the Complaint and Exhibit E to the Amended Complaint are referred to as Dissolution Method Revision 6.  (Cmplt. Ex. E (Dkt. No. 14-5); Am. Cmplt. Ex. E (Dkt. No. 15-1) at 31-43)  Defendants seek to redact information related to the dissolution testing of Quillivant, including:  types and quantities of reagents and chemicals used in testing procedures; the type of inline filter used for the dissolution procedure; the duration of solution stability when stored at room temperature; conditions and methods implemented in high-performance liquid chromatography tests; calculations used to determine the percentage of release of the drug during testing; and data demonstrating test results.  (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 10-15, 37-43; Liang Decl., Ex. 2 (Dkt. No. 22-2) at 3-8; Liang Decl., Ex. 4 (Dkt. No. 22-4) at 7-13)

Exhibit D to the Complaint and Exhibit D to the Amended Complaint are copies of the Deviation Report for Lot 03212001A.  (Cmplt. Ex. D (Dkt. No. 14-4); Am. Cmplt. Ex. D (Dkt. No. 15-1) at 27-30)  With respect to that report, Defendants seek to redact certain methods, instruments, and substances used to investigate the source of a deviation in a specific lot of Methylphenidate ER Powder for Oral Suspension, as well as the results obtained throughout that investigation.  (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 29-31; Liang Decl., Ex. 3 (Dkt. No. 22-3) at 3-5)

Exhibit G to the Complaint and Exhibit G to the Amended Complaint contain an email from Tris's Senior Manager of Quality of Control, dated November 12, 2024.  (Cmplt. Ex. G (Dkt. No. 14-7) at 3; Am. Cmplt. Ex. G (Dkt. No. 15-1) at 67)  Defendants seek to redact the

numeric "out-of-specification result" of a "mesh pass through" set forth in the email.[8]  (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 68; Liang Decl., Ex. 5 (Dkt. No. 22-5) at 4)

Exhibit K to the Complaint and Exhibit L to the Amended Complaint are copies of the FDA Observations of Tris issued on March 20, 2017.  (Cmplt. Ex. K (Dkt. No. 14-11); Am. Cmplt. Ex. L (Dkt. No. 15-1) at 83-92)  Defendants seek to redact portions of the FDA's inspection of Tris's facilities, including observations of the following:  out-of-specification results for dissolution testing for approximately five lots of Methylphenidate ER Powder for Oral Suspension; raw materials used for testing; vendors (and their locations) that supplied the raw materials; methods and instruments used to perform the dissolution testing; and particular substances used for the "manufacture of various finished drug product[s]."  (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 86, 88-91; Liang Decl., Ex. 6 (Dkt. No. 22-6) at 4, 6-9)

Exhibit N to the Complaint and Exhibit O to the Amended Complaint are copies of Tris's internal auditing reports concerning "the level of compliance of the Regulatory Affairs Department at [Tris]."  (Cmplt. Ex. N (Dkt. No. 14-14); Am. Cmplt. Ex. O (Dkt. No. 15-1) at 112-28; Am. Cmplt. Ex. O (Dkt. No. 15-2) at 1-19)  Defendants seek to redact the following types of information within those reports:  information identifying particular lots of medications; the strength of those medications; methods, instruments, and substances used to manufacture those medications; protocols for non-conformance reports; and results of non-conformance reports.  (Liang Decl., Ex. 1 (Dkt. No. 22-1) at 118, 123-26, 129, 133, 136-41, 143, 145, 148; Liang Decl., Ex. 7 (Dkt. No. 22-7) at 7, 12-15, 18, 22, 25-30, 32, 34, 37)

---

[8]  According to Relator, a drug is considered "out-of-specification" if it does not satisfy the requirements of the requisite dissolution test.  (See SAC (Dkt. No. 34) ¶ 55)

### 2.    Analysis

Courts commonly seal documents "containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like." In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. and Versys Femoral Head Prod. Liab. Litig., 18 MD 2859 (PAC), 2021 WL 4706199, at *4 (S.D.N.Y. Oct. 8, 2021) (quoting Kewazinga Corp. v. Microsoft Corp., No. 18 Civ. 4500, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021). The Liang Declaration demonstrates that the information at issue – confidential research and development information pertaining to Tris's drug manufacturing technology and processes – is highly sensitive. (See Liang Decl. (Dkt. No. 22) ¶¶ 4-8) The Court concludes that the disclosure of Tris's research and development information in the level of detail described above would subject the company to a risk of competitive harm. See In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are 'sources of business information that might harm a litigant's competitive standing.'") (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978)). The Court further concludes that Defendants' proposed redactions are "narrowly tailored to preserve public access to the greatest extent possible without compromising the parties' ability to compete in the marketplace." Sony Corp. v. Fujifilm Holdings Corp., 16 Civ. 5988 (PGG), 2016 WL 11708368, at *2 (S.D.N.Y. Nov. 1, 2016) (granting motion to seal where parties proposed narrow redactions to "details regarding confidential contractual terms, technology specifications, and other proprietary business information). Accordingly, Defendants' motion to redact Exhibits 1 through 7 to the Liang Declaration is granted.

## CONCLUSION

Plaintiff's motion to seal (Dkt. Nos. 20, 43) is granted.  By **February 11, 2026,** the parties will make the filings on the public docket necessary to comply with this Order.  The Clerk of Court is directed to terminate the motions (Dkt. Nos. 20, 43).

Dated:  New York, New York
        February 4, 2026

                              SO ORDERED.

                              _____
                              Paul G. Gardephe
                              United States District Judge

12